UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANTONY DAOU,

                         Plaintiff,

        -against-                                          1:05-CV-0620
                                                             (LEK/DRH)

EARLY ADVANTAGE, LLC,

                         Defendant.

_____

## MEMORANDUM-DECISION AND ORDER[1]

### I. Background

Plaintiff Antony Daou ("Daou" or "Plaintiff") brought this action against Defendant Early

Advantage, LLC ("EALLC" or "Defendant"), claiming, *inter alia*, breach of contract, that

Defendant failed to pay Daou an agreed upon non-discretionary bonus, that Defendant failed to pay

Daou for compensatory/vacation days, unjust enrichment of Defendant, and damages for

anticipatory breach/repudiation of contract by Defendant.  See Complaint (Dkt. No. 1).  Plaintiff

claims violation of Connecticut law.  See id.  Defendant claims that on May 27, 2005, the summons

and complaint were served upon it by personal service in Fairfield, Connecticut, at EALLC's

offices.  See Mem. of Law in Support (Dkt. No. 9, attach. 3) at 3.

On July 21, 2005, Defendant filed a Motion to Dismiss for lack of personal jurisdiction over

Defendant, pursuant to Federal Rule of Civil Procedure ("Rule" or "F.R.C.P.") 12(b)(2), or in the

alternative to dismiss for improper venue, pursuant to Rule 12(b)(3), or for transfer of venue to the

United States District Court for the District of Connecticut, and for a more definite statement of

_____

[1] For printed publication by the Federal Reporters.

Plaintiff's claims surrounding the non-payment of the non-discretionary bonus pursuant to Rule 12(e). Deft's Motion (Dkt. No. 9). Plaintiff and Defendant have fully briefed the issues (Dkt. Nos. 9-11 & 13-15), and the Court now considers the motion.

From September 2000 until February 18, 2005, Plaintiff was employed by Defendant EALLC. Defendant is a Connecticut company, with its principal place of business located in the State of Connecticut. Defendant provides educational resources for children, such as language courses (including the popular "Muzzy" language series). Complaint (Dkt. No. 1) at ¶ 1; Plntf's Mem. in Opp. (Dkt. No. 10) at 3. Defendant is an independent publisher, and provides material "through direct response marketing (mail order)." Id. See also Daou Affidavit (Dkt. No. 11) at ¶¶ 9-10.

Plaintiff was a high-ranking employee of Defendant, working in the North American, European and United Kingdom markets. Id. at 2. "Daou was the Managing Director of EA's wholly owned subsidiary, Early Advantage (UK) Ltd. ("EA UK") and Head of International Operations and Licensing for the EA Group of Companies that in addition to EA and EA UK also includes...Early Advantage Luxembourg and Early Advantage Canada." Complaint (Dkt. No. 1) at ¶ 3. See also Daou Affidavit (Dkt. No. 11) at ¶ 5. For most of his employment with EALLC, Plaintiff maintained his residence in the State of Connecticut. Plaintiff moved to Sharon Springs, New York, in the Fall (September) of 2004. Plntf's Mem. in Opp. (Dkt. No. 10) at 2; Decl. of Ward in Sup. of Motion (Dkt. No. 9) at 3. Daou worked out of EALLC's Connecticut office and U.K. locations, as well as out of his home in New York following his change of residence. "At all times, Daou also spent considerable time working in Europe where typically he worked from Defendant's UK locations for one to two weeks per month." Complaint (Dkt. No. 1) at ¶ 5. Plaintiff claims that

his relocation to New York was approved by Defendant, and that work was sent to Plaintiff at his New York home-office by Defendant. Plntf's Mem. in Opp. (Dkt. No. 10) at 5-6. Plaintiff continued to maintain an address in Connecticut until December of 2004, mostly due to pressure from Defendant and Defendant's principal and president David S. Ward ("Ward"). Id. at 6. Following his termination, Plaintiff filed for unemployment benefits in New York State, but the New York office transferred the application to Connecticut, which, Plaintiff claims, is why it appears that he has applied to Connecticut for unemployment benefits despite claiming to be a resident of New York. Decl. of Daou (Dkt. No. 15) at 2.

EALLC undertakes national and regional advertising, and purchasers respond via call centers located in Connecticut and elsewhere, including Dial America, which Plaintiff alleges has New York locations. See Daou Affidavit (Dkt. No. 11) at ¶ 10; Plntf's Mem. in Opp. (Dkt. No. 10) at 3-4. New York is an important market for EALLC, constituting "approximately 8% of the total annual activity of EA in the U.S." ($2 million), and New York "has been the single largest source of sales for EA" by state. Daou Affidavit (Dkt. No. 11) at ¶ 13; Plntf's Mem. in Opp. (Dkt. No. 10) at 3-4. According to Plaintiff, EALLC specifically targets New York customers, as well. Plntf's Mem. in Opp. (Dkt. No. 10) at 3-5.

Plaintiff further alleges that the "Great Books Summer Reading Program", which he started and managed, specifically targeted New York schools. Daou Affidavit (Dkt. No. 11) at ¶¶ 14-15. However, Defendant stresses that the Great Books Program is a separately incorporated company, and Defendant provided the Connecticut Articles of Organization and the Application for Employer Identification Number for Great Books Summer Reading Program LLC, as exhibits to the

Declaration of Ward.  Decl. of Ward (Dkt. No. 14) at ¶ 3 and Ex. A & B.[2]

Regarding change of venue, Defendant claims that:

> The office of EALLC is in Connecticut.  Daou worked from the EALLC office in
> Connecticut.  All of the potential EALLC witnesses are available, and would be deposed, in
> Connecticut.  Any documents that may be requested by Daou from EALLC are kept in
> Connecticut.  All of Daou's contacts, both with EALLC and in his personal life, were in
> Connecticut until he chose to move to New York in September, 2004.  In fact, Daou
> maintained an address in Connecticut through the end of 2004.

Def't's Mem. of Law in Sup. of Motion (Dkt. No. 9) at 10.  In response, Plaintiff argues that:

> While [Plaintiff] has had contact with Connecticut, none of the other factors militate in favor
> of transferring this action.  While certain deponents, such as Ward, may reside in
> Connecticut, depositions in this matter should be limited, as should the exchange of
> documents.  Most significantly, [Plaintiff], an individual, has properly chosen to commence
> this action primarily stemming from EA's wrongful refusal to pay him accrued wages in this
> forum, in which his home is located.

Plntf's Mem. in Opp. (Dkt. No. 10) at 16-17.

After due consideration of the facts of this matter, as set forth above, and the arguments of

the parties, and for the reasons below, the Court hereby: (1) denies Defendant's motion to dismiss

for lack of personal jurisdiction and improper venue; (2) grants Defendant's request in the

alternative and orders that the case be transferred to the more appropriate, alternate venue of the

United States District Court for the District of Connecticut, Bridgeport Division; and (3) denies

Defendant's remaining request for a more definite statement of claim, pursuant to Rule 12(e),

without prejudice to the motion being re-filed following transfer.

---

[2] Defendant failed to assign exhibit letters for its attachments to the Declaration of Ward
(Dkt. No. 14).  Therefore, the Court hereby assigns the following designations: Exhibit A - Articles
of Organization; Exhibit B - Application for Employer Identification Number; and Exhibit C -
Notice of Potential Liability.

## II.  Discussion

### *A.  Standards of Law*

#### 1.  Rule 12(b)(2) - Motion to Dismiss for Lack of Personal Jurisdiction

As this Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332 -

diversity jurisdiction - "the Court must apply the law of the state in which it sits when determining

whether personal jurisdiction exists over each defendant." Pianelli v. Hershey, No. 99-CV-

64(FJS)(GJD), 2000 WL 98098, at *2 (N.D.N.Y. Jan. 28, 2000) (Scullin, D.J.) (citing Schomann

Int'l Corp. v. N. Wireless, Ltd., 35 F. Supp. 2d 205, 207 (N.D.N.Y. 1999) (McAvoy, C.J.) (citing,

*inter alia*, CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986))). See also Okin v.

Jiminy Peak, Inc., No. CV-94-4330, 1995 WL 116277, at *4-*5 (E.D.N.Y. Feb. 24, 1995) (citing,

United States v. First Nat'l City Bank, 379 U.S. 378, 381-82 (1965); Arrowsmith v. United Press

Int'l, 320 F.2d 219, 223 (2d Cir. 1963) (en banc)).  Thus, in this case the relevant law is that of New

York State, as discussed in Section II.A.3, *infra*.

When a Rule 12(b)(2) motion to dismiss has been filed, as in the present case, Plaintiff

"bears the burden of establishing that the court has jurisdiction over the defendant, since Defendant

has served the Rule 12(b)(2) motion". Aldinger v. Segler, No. 04 CV. 4405(RJH), 2005 WL

2591958, at *2 (S.D.N.Y. Oct. 13, 2005) (internal quotation marks omitted; citing and quoting

Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)).

When considering whether personal jurisdiction exists under Rule 12(b)(2), the Court

analyzes the following factors:

"(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the
interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining
convenient and effective relief; (4) the interstate judicial system's interest in obtaining the

5

most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."

In re Parmalat Secur. Litig., 376 F. Supp. 2d 449, 457 (S.D.N.Y. 2005) (citing and quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996)). The Parmalat Court continued: "Moreover, '[w]here a plaintiff makes the threshold showing of the minimum contacts required by the first test, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."'" In re Parmalat, 376 F. Supp. 2d at 457 (citing and quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 129 (2d Cir. 2002)).

A decision from the Eastern District of New York sets forth the standard for consideration even more concisely:

When a defendant moves to dismiss a complaint under Rule 12(b)(2) for want of personal jurisdiction, courts must perform a two-part analysis. First, personal jurisdiction over a defendant must be established under the law of the state where the federal court sits.... Second, if jurisdiction is established under the governing statute, courts must determine whether the exercise of jurisdiction under the relevant state law would violate the defendant's due process rights.

"[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."...Where a court does not conduct a "'full-blown evidentiary hearing,...the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials'" to survive a motion to dismiss under Rule 12(b)(2)....In other words, prior to discovery, a plaintiff may defeat a jurisdiction-testing motion "by pleading in good faith,...legally sufficient allegations of jurisdiction."

Harris v. Ware, No. 04 CV 1120(JG), 2005 WL 503935, at *1-*2 (E.D.N.Y. Mar. 4, 2005) (citing, inter alia, Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999); Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998)).

When evaluating the parties' submissions, the Court will read the Complaint and

submissions in the light most favorable to Plaintiff.  See Maldonado v. Rogers, 99 F. Supp. 2d 235, 236 (N.D.N.Y. 2000) (McAvoy, D.J.) (citing, *inter alia*, CutCo Indus., 806 F.2d at 365 (prior to an evidentiary hearing, Plaintiff "need make only a prima facie showing by its pleadings and affidavits that jurisdiction exists....Those documents are construed in the light most favorable to plaintiff and all doubts are resolved in its favor.") (citations omitted)); Bank of California v. Smith Barney, Inc., No. 89-CV-551, 1997 WL 736529, at *1-*2 (N.D.N.Y. Oct. 31, 1997) (Munson, S.D.J.) (prior to discovery, "Plaintiff only needs to allege facts constituting a *prima facie* showing of personal jurisdiction to defeat a Rule 12(b)(2) motion to dismiss....[T]he court must construe the pleadings and affidavits in plaintiff's favor at this early stage.").

## 2.  Rule 12(b)(3) - Motion to Dismiss for Improper Venue

A district court addresses different considerations when faced with a motion pursuant to Rule 12(b)(3).  This is the *forum non conveniens* analysis, and a district court may dismiss a case if an alternative forum exists where the case may be heard, and if trial in the present forum "would be oppressive and vexatious to a defendant."  Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS, 315 F. Supp. 2d 286, 290 (W.D.N.Y. 2004) (citations omitted).  Another forum is proper if: "(1) the defendants are subject to service of process there and (2) the forum permits litigation of the subject matter of the dispute."  Id.  But, the inquiry still does not end there, for if an adequate alternative forum is found, the Court must also consider "public and private interest factors in deciding whether to give deference to the plaintiff's choice of forum."  Id.

The public factors include court congestion in the chosen forum, the local interest in deciding local controversies at home, the interest in having the trial in a forum that is familiar with the governing law, the difficulties in applying foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty.  Private factors include the ease

of access to sources of proof and the ability and cost of procuring witnesses....

Id. Furthermore,

> 28 U.S.C. § 1404(a),...allows the Court in its discretion to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice." The burden is on the moving party to demonstrate entitlement to transfer on this ground....In addressing the request, the Court must balance the following factors: "(1) the weight accorded the plaintiff's choice of forum; (2) the place where the operative facts took place; (3) the convenience of the parties; (4) the convenience of the witnesses; (5) the availability of process to compel unwilling witnesses; (6) the location of relevant documents and the relative ease of sources of proof; and (7) trial efficiency and the interests of justice."...

> It is well established that a plaintiff's choice of forum should not be disturbed unless the balance of factors tips heavily in favor of transfer.

United Computer Capital Corp. v. Daidone, No. 5:02-CV-1431, 2005 WL 579565, at *4 (N.D.N.Y.

Mar. 7, 2005) (Mordue, D.J.) (citing Fine Foods Int'l LP v. N. Am. Fine Foods, Inc., No.

99-CV-1062 (ILG), 1999 WL 1288681, *5 (E.D.N.Y. Nov. 12, 1999)).

Generally, a strong presumption exists in favor of the forum in which Plaintiff has chosen to

bring suit. The party moving for change of venue bears the burden of "establish[ing] that the

alternative forum is 'clearly more appropriate.'...Dismissal will generally be inappropriate unless

'the balance of convenience tilts strongly in favor of trial in the foreign forum.'" Minibooster

Hydraulics, 315 F. Supp. 2d at 290 (citations omitted).

Upon consideration of a motion to dismiss pursuant to Rule 12(b)(3), the Court again "must

accept the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's

favor." Micromuse, Inc. v. Aprisma Mgmt. Tech., Inc., No. 05 Civ. 0894SAS, 2005 WL 1241924,

at *2 (S.D.N.Y. May 24, 2005) (citations omitted). See also Matera v. Native Eyewear, Inc., 355 F.

Supp. 2d 680, 681 (E.D.N.Y. 2005) (citations omitted); Meteoro Amusement Corp. v. Six Flags,

267 F. Supp. 2d 263, 266 (N.D.N.Y. 2003) (McCurn, S.D.J.).

### 3. Jurisdiction Under New York Law

Personal jurisdiction in New York State may be established under either § 301 or § 302 of New York's *Civil Practice Law and Rules* ("C.P.L.R."), or other, similar such statutory provisions (i.e., for the *in rem* and *quasi in rem* bases for territorial jurisdiction, see N.Y. C.P.L.R. § 314). Pursuant to the procedural rules and laws of New York State:

A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore.

N.Y. C.P.L.R. § 301 (McKinney 2005).  In addition:

[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; ...

N.Y. C.P.L.R. § 302(a)(1) (McKinney 2005).

"With respect to in personam jurisdiction, New York recognizes five potential bases: presence, consent, domicile, doing business and 'long-arm jurisdiction.'  The first four of these bases were imbedded in the state's jurisdictional law prior to the adoption of CPLR 301 and are preserved by that section....Long-arm jurisdiction is the topic of CPLR 302".  N.Y. C.P.L.R. § 301 cmt. C301:1.

Furthermore, the commentaries to § 301 provide that:

the rule is that the corporation must be doing business in New York at the time the action is commenced.  If the corporation has ceased doing business here at the time of commencement, jurisdiction can be sustained only if plaintiff's claim arose out of the defendant's prior business activity....Although a new constitutional justification for the assertion of general personal jurisdiction over foreign corporations has emerged..., the New York courts continue to speak of a corporation's doing business here as creating "presence" within the state.

N.Y. C.P.L.R. § 301 cmt. C301:8(a) (citing <u>Lancaster v. Colonial Motor Freight Line, Inc.</u>, 581

N.Y.S.2d 283, 286 (1st Dep't 1992); <u>Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.</u>, 77

N.Y.2d 28, 33 (1990)).  It has been noted that:

> A foreign corporation is amenable to suit in New York courts under CPLR 301 if it has
> engaged in such a continuous and systematic course of "doing business" here that a finding
> of its "presence" in this jurisdiction is warranted....The test for "doing business" is a "simple
> [and] pragmatic one," which varies in its application depending on the particular facts of
> each case.... The court must be able to say from the facts that the corporation is "present" in
> the State "not occasionally or casually, but with a fair measure of permanence and
> continuity."...Thus, jurisdiction is dependent upon a showing that the corporation is doing
> business in New York systematically, continuously and with a fair measure of permanence.
> These are elastic terms that befit the infinite variety of ways in which business may be
> conducted.  The Court of Appeals itself has acknowledged that the standard is imprecise...,
> and federal courts in New York, which are often required to apply New York bases of
> territorial jurisdiction, have made the same observation....

N.Y. C.P.L.R. § 301 cmt. C301:8(b) (citing, *inter alia*, <u>Landoil</u>, 77 N.Y.2d at 33-34; <u>Sterling</u>

<u>Novelty Corp. v. Frank & Hirsch Distrib. Co.</u>, 299 N.Y. 208, 210 (1949)).

   For purposes of § 302(a)(1), when determining whether a defendant "transacts any

business", the provision "has been interpreted to require a certain quality, rather than a specific

quantity, of a defendant's contact with the forum." <u>Bank of California</u>, 1997 WL 736529, at *3

(citing, *inter alia*, <u>Manhattan Life Ins. Co. v. A.J. Stratton Syndicate</u>, 731 F. Supp. 587, 592

(S.D.N.Y. 1990)).  In fact, <u>Bank of California</u> made clear that "New York law examines the 'totality

of circumstances' to determine whether a defendant has engaged in some purposeful activity within

the state in connection with the matter in controversy." <u>Bank of California</u>, 1997 WL 736529, at *3

(citing, <u>Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.</u>, 15 N.Y.2d 443, 457 (1965),

<u>cert. denied sub. nom.</u>, <u>Estwing Mfg. Co. v. Singer</u>, 382 U.S. 905 (1965)).

   The test for determining personal jurisdiction based upon doing business,

though not "precise"...is a "simple pragmatic one"...: is the aggregate of the corporation's activities in the State such that it may be said to be "present" in the State "not occasionally or casually, but with a fair measure of permanence and continuity"...and is the quality and nature of the corporation's contacts with the State sufficient to make it reasonable and just according to "'traditional notions of fair play and substantial justice'" that it be required to defend the action here.

Laufer v. Ostrow, 55 N.Y.2d 305, 310 (1982) (Meyer, J.) (citing and quoting, *inter alia*, Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 268 (1917) (Cardozo, J.); Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 320 (1945) (Stone, C.J.); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (White, J.)).

### B.  Personal Jurisdiction Over Defendant EALLC

The Complaint was filed in May of 2005, and the current motion by Defendant was filed two months later in July of 2005.  From the docket and record, it does not appear as though much, if any, discovery has occurred in this matter.  See, generally, Pianelli, 2000 WL 98098, at *2.  Furthermore, again "[b]ecause Defendants challenge personal jurisdiction prior to discovery, Plaintiffs can defeat Defendants' motion by making a prima facie showing of jurisdiction."  Id. at *2 (citing Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)); Ware, 2005 WL 503935, at *1-*2.

First, this Court will address the issue of the separate incorporation of Great Books Summer Reading Program LLC ("GBSRP") and Defendant EALLC.  Both parties have addressed the evidence concerning the separate incorporation issue.  See Decl. of Ward (Dkt. No. 14); Decl. of Daou (Dkt. No. 15).  Defendant EALLC has provided the Articles of Organization for GBSRP, see Decl. of Ward (Dkt. No. 14) at Ex. A, and those Articles do not mention EALLC as an owner, member or agent of GBSRP.  Ward is listed as the manager, in the section containing information

11

on managers and members.  Connecticut law requires that the writing forming an LLC include, *inter alia*, "[t]he name and residence address of each person who has become an initial member of the limited liability company".  CONN. GEN. STAT. ANN. § 34-120 (West 2005).  See, generally, Connors v. Evans, No. CV030284821S, 2005 WL 469261 (Conn. Super. Ct. Jan. 21, 2005).  It appears that GBSRP's papers were filed in 2004, see Decl. of Ward (Dkt. No. 14) at Ex. A, and the Historical and Statutory Notes accompanying the statute section on Westlaw indicate no amendments since 2001, see CONN. GEN. STAT. ANN. § 34-120 (West 2005), Historical & Statutory Notes.  Plaintiff asserts that "this separate incorporation occurred in mid-November 2004, only a few months before my termination from EA in February 2004 [*sic*] and <u>after</u> I performed the extensive and valuable services for [GBSRP] in New York under the auspices of EA that are detailed in my affidavit submitted in opposition to EA's motion."  Decl. of Daou (Dkt. No. 15) at ¶ 2 (emphasis by Plaintiff).

Under the procedural law, usually, courts look to the status and activities of foreign corporations at the time an action is commenced.  See, generally, Gaboury v. Cent. Vermont Ry. Co., 250 N.Y. 233, 236 (1929) (Cardozo, C.J.); Lancaster v. Colonial Motor Freight Line, Inc., 581 N.Y.S.2d 283, 286 (1st Dep't 1992).  Plaintiff has brought this suit solely against EALLC, and not against any other company, entity or subsidiary.  If Plaintiff had included GBSRP as a defendant, there might be an argument for personal jurisdiction over that entity in this Court.  But, Plaintiff has not even listed David Ward as an individual defendant so as to be able to argue that Plaintiff worked for Ward as an employee involved with both companies.  See Complaint (Dkt. No. 1).  Therefore, this Court will not consider any contacts that GBSRP currently has with New York for jurisdictional purposes related to Defendant EALLC.  However, the Court will consider work done by the Plaintiff

for EALLC in connection with the Great Books Program prior to GBSRP's separate incorporation, in determining personal jurisdiction over Defendant EALLC, given that some of Plaintiff's claims allegedly arise from that work.  See N.Y. C.P.L.R. § 301 cmt. C301:8(a) (citing Lancaster v. Colonial Motor Freight Line, Inc., 581 N.Y.S.2d 283, 286 (1st Dep't 1992); Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 33 (1990)).

Turning to the main issue with which this opinion is concerned, this Court has determined that personal jurisdiction over Defendant EALLC does exist under N.Y. C.P.L.R. § 301.  As such, the Court will not reach the issue of jurisdiction under § 302.  Reading the pleadings in a light most favorable to Plaintiff, it appears that Plaintiff has made the required *prima facie* showing.  EALLC makes substantial sales in New York State.  Furthermore, Plaintiff had established himself as a resident of New York, an agent of the company, with an office in his New York home, by permission of EALLC, in which Plaintiff worked on business for Defendant company.  While the Court agrees with Defendant that once Plaintiff was terminated, EALLC no longer had a New York employee, a New York office, or a New York agent, see Mem. of Law in Support (Dkt. No. 9, attach. 3) at 6, Defendant does meet the "solicitation-plus" requirement for a finding of personal jurisdiction, and Plaintiff's residence in the Northern District of New York located the breach of contract here.

Again, usually, courts look to the status and activities of foreign corporations at the time an action is commenced.  See, generally, Gaboury, 250 N.Y. at 236; Colonial Motor Freight Line, Inc., 581 N.Y.S.2d at 286.  Courts may also look to prior activities and contacts.  See N.Y. C.P.L.R. § 301 cmt. C301:8(a), and discussion *supra*.  Courts have stated that: "[w]hen an entity regularly, continuously and systematically engages in business activity in New York, it is deemed to be

13

present here, and subject to general, in personam jurisdiction in New York, even over causes of action having no New York nexus." FCNB Spiegel Inc. v. Dimmick, 619 N.Y.S.2d 935, 937 (N.Y. Civ. Ct. 1994) (citing Bryant v. Finnish Nat'l Airline, 15 N.Y.2d 426 (1965) (Desmond, C.J.)). Courts have also held that: "[e]ach case must be decided on its own facts..., and the relevant factors to be considered include 'the existence of an office in New York; the presence of bank accounts and other property in the state; the solicitation of business in the state; and the presence of employees of the foreign defendant in the state.'... However, the 'mere solicitation of business' does not constitute doing business; some additional activities are required." Tripmasters, Inc. v. Hyatt Int'l Corp., 696 F. Supp. 925, 930 (S.D.N.Y. 1988) (citing, *inter alia*, MacInnes v. Fontainebleau Hotel Corp., 257 F.2d 832, 833 (2d Cir. 1958); Berk v. Nemetz, 646 F. Supp. 1080, 1083 (S.D.N.Y. 1986)).

Defendant EALLC, at the time this suit was commenced, solicited business and made significant sales in New York State. Defendant qualifies under the "solicitation-plus" test for jurisdiction. "Though 'mere solicitation' alone does not constitute 'doing business,' solicitation coupled with other activities within the forum state will render a corporation 'present' for the purposes of personal jurisdiction.... To invoke the 'solicitation-plus rule,' solicitation by a foreign corporation must be substantial.... 'Although once solicitation is found in a substantial degree very little more is necessary to a conclusion of doing business... To sustain personal jurisdiction, New York courts require substantial solicitation that is carried on with a considerable measure of continuity and from a permanent locale within the state.'" Traflex Int'l, Inc. v. Jasmin, Ltd., No. 88 CIV. 3557, 1990 WL 115624, at *2-*3 (S.D.N.Y. Aug. 7, 1990) (emphasis added) (citing, *inter alia*, Traub v. Robertson-Am. Corp., 368 N.Y.S.2d 958 (1975); and citing and quoting Beacon Enter., Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir. 1983)). Eight percent sales (comprising two million

14

dollars of income) are quite significant, coupled with Defendant's substantial advertising reach into New York State.  Furthermore, until just before the commencement of the suit, Defendant employed Plaintiff in New York State, with Plaintiff having an office in New York, and with Plaintiff performing work on behalf of EALLC and the Great Books Program - a program that targeted New York schools.  The home-office of Plaintiff was a permanent locale, which was only terminated when Defendant terminated Plaintiff's employ.  Defendant's unilateral move cannot act to defeat jurisdiction.  The "purposeful availment" doctrine prevents a plaintiff's unilateral acts from establishing jurisdiction over a non-resident defendant.  See McCloud v. Lawrence Gallery, Ltd., No. 90 Civ. 30(KMW), 1991 WL 136027, at *8 (S.D.N.Y. Jul. 12, 1991).  However, in this case, Plaintiff's actions were not unilateral.  The move to New York and the home-office were approved by EALLC, and Defendant established itself as doing business within New York.  Thus, it also seems appropriate that Defendant not be permitted to use its termination of Plaintiff and unilateral closing of Plaintiff's New York home-office, as a shield from personal jurisdiction.  See, generally, McKinnon v. Talladega County, Ala., 745 F.2d 1360, 1363 (11th Cir. 1984) (Wisdom, J., *by designation*) (some courts find that exercise of jurisdiction might be entertained if evidence exists that a defendant attempted to evade jurisdiction, although finding no evidence of "such subterfuge" in the case at bar).  In the present case, Defendant significantly reached into, and continues to reach into, the State of New York, and does business here, thus making exercise of personal jurisdiction appropriate.  The same would be true even if, *arguendo*, the above-asserted bases of jurisdiction were not sufficient to hold Defendant as currently doing business in New York, for an evaluation of Defendant's past activities and contacts - from which Plaintiff's allegations arise - would be sufficient under N.Y. C.P.L.R. § 301, and its commentaries and citations, to establish jurisdiction.

15

Although certain of the cases cited as support by Plaintiff are distinguishable in this matter, including Oriska Ins. Co. v. Power P.E.O. Inc., 352 F. Supp. 2d 291 (N.D.N.Y. 2004) (Hurd, D.J.) (*inter alia*, clear contract contacts with New York), and Jones v. Labofa A/S, 94-CV-1477 (RSP/GJD), 1997 U.S. Dist. LEXIS 16147 (N.D.N.Y. Oct. 15, 1997) (Pooler, D.J.) (involving C.P.L.R. § 302(a)(3)(ii), and tort arising from goods in stream of international commerce), overall the Court finds that Plaintiff has made a *prima facie* case that personal jurisdiction exists in this District under N.Y. C.P.L.R. § 301.

Indeed, "Defendants 'should be subject to suit where they are normally found, that is, at their pre-eminent headquarters, or where they conduct substantial general business activities.  Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact.'" Tripmasters, 696 F. Supp. at 938 (citing McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 383 (1967)).  Defendant has conducted, and continues to conduct, substantial business activities in New York State.  That, coupled with the evaluation of the Parmalat, 376 F. Supp. 2d at 457, and Ware, 2005 WL 503935, at *1-*2, factors, results in no other determination than the existence of personal jurisdiction.

Therefore, having considered all of the facts and law, the Court finds that dismissal for lack of personal jurisdiction is not proper, and therefore denies Defendant's motion pursuant to Rule 12(b)(2).

### C.  Change of Venue

Reviewing all of the facts in a light most favorable to the non-moving Plaintiff, it appears that Plaintiff has made a showing sufficient for a finding that venue is proper in the Northern

District of New York - although this District is not the most appropriate venue for this matter.

Again, Plaintiff resides in the Northern District of New York, and resided in the Northern District of

New York toward the end of his employment with Defendant, working out of his New York home's

office at certain times, while EALLC sold goods to New York buyers - and at the time Plaintiff was

terminated and the alleged non-payment of bonus and wages occurred.  The facts of Plaintiff's

residence and home-office in New York State at the time of termination and non-payment, at least

placing the alleged breach of contract in New York, impacts on this Court's evaluation.

Therefore, the Court denies Defendant's motion for dismissal based on improper venue

under Rule 12(b)(3).  But, as discussed below, the Court will transfer this case to the District of

Connecticut, where the Court believes venue would be much more appropriate, where the current

action could also have been filed, and where Defendant is also subject to personal jurisdiction.

Indeed, the Court has considered the factors set forth in Section II.A.2, *supra*, namely:

> The public factors include court congestion in the chosen forum, the local interest in
> deciding local controversies at home, the interest in having the trial in a forum that is
> familiar with the governing law, the difficulties in applying foreign law, and the unfairness
> of burdening citizens in an unrelated forum with jury duty.  Private factors include the ease
> of access to sources of proof and the ability and cost of procuring witnesses....

Minibooster Hydraulics, 315 F. Supp. 2d at 290.  And, again,

> In addressing [change of venue], the Court must balance the following factors: "(1) the
> weight accorded the plaintiff's choice of forum; (2) the place where the operative facts took
> place; (3) the convenience of the parties; (4) the convenience of the witnesses; (5) the
> availability of process to compel unwilling witnesses; (6) the location of relevant documents
> and the relative ease of sources of proof; and (7) trial efficiency and the interests of
> justice."...

Daidone, 2005 WL 579565, at *4.

As District Judge Scheindlin, of the Southern District of New York, noted when addressing

change of venue under 28 U.S.C. § 1404 in <u>Micromuse</u>: "'[t]he plaintiff's choice of forum is to be given substantial weight and should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's proposed forum, especially where [ ] plaintiff's chosen forum is its principal place of business.'" <u>Micromuse, Inc.</u>, 2005 WL 1241924, at *3 (citing <u>Toy Biz, Inc.</u> <u>v. Centuri Corp.</u>, 990 F. Supp. 328, 330 (S.D.N.Y. 1998) (citing <u>Golconda Mining Corp. v.</u> <u>Herlands</u>, 365 F.2d 856, 857 (2d Cir. 1966))).  In this case, to start with, Plaintiff has not chosen the forum within which Defendant has its principal place of business.  It should also be noted, given the other factors discussed above, that witnesses, documents, and other necessary discovery and trial materials are located in the State of Connecticut.  Furthermore, although Plaintiff states that: "depositions in this matter should be limited, as should the exchange of documents", Plntf's Mem. in Opp. (Dkt. No. 10) at 16-17, those are things that will be better known and understood as discovery progresses.  Plaintiff cannot speak for all parties in saying that few depositions will be taken and few documents required or exchanged.  Thus, this Court has instead evaluated the factors with an eye toward the fact that it appears, from the pleadings of both parties, that despite whatever number of documents or witnesses may actually be required in this matter, all of said witnesses and documents are located in Connecticut.  In addition, it appears through the pleadings and facts that the main events leading to the dispute over employment and payment of Plaintiff have occurred in Connecticut, arising out of an employment agreement that was agreed to in Connecticut, for a relationship that existed in Connecticut and elsewhere for almost five years, under Connecticut law.

Given all of the factors just mentioned, and evaluation of the considerations from the <u>Minibooster</u> and <u>Daidone</u> tests, *supra*, the more convenient forum appears to be in Connecticut.  <u>See</u> <u>also, generally,</u> <u>King v. Gonzales</u>, No. 02 CV 3847 JG, 2005 WL 2271938 (E.D.N.Y. Aug. 16,

2005) ("When considering venue, in addition to considering the petitioner's choice of forum, courts must consider '(1) where all of the material events took place; (2) where the records and witnesses pertinent to petitioner's claim are likely to be found; and (3) the convenience of the forum for both the respondent and the petitioner.'") (citing and quoting Henderson v. I.N.S., 157 F.3d 106, 128 n.25 (2d Cir. 1998)).

Therefore, after weighing all of the pertinent factors, there is an absolutely more appropriate forum within which this matter may be tried - the United States District Court for the District of Connecticut.  The balance of convenience certainly tilts strongly in favor of trial in that venue. Defendant EALLC has met the burden of demonstrating that Connecticut is clearly a more appropriate forum.  Therefore, while Defendant's motion for dismissal for improper venue in the Northern District of New York, pursuant to Rule 12(b)(3), is denied, the Court will grant the alternative request and order the transfer of this case.

### D.  More Definite Statement of Claim

As the Court is transferring this case to the United States District Court for the District of Connecticut, and given the early stage of the proceedings, all decisions affecting this case going forward should be rendered by our Sister Court in Connecticut.  Thus, this Court will deny Defendant's remaining request, under Rule 12(e), for a more definite statement of claim, without prejudice to the motion being re-filed following transfer of the case to the District of Connecticut.

### III.  Conclusion

Based on the foregoing discussion, it is hereby

19

**ORDERED**, that Defendant's Motion to Dismiss for lack of personal jurisdiction or improper venue, pursuant to Rule 12(b)(2) and Rule 12(b)(3), is **DENIED**.  However, despite venue being proper in the Northern District of New York, a more appropriate alternate venue exists in the District of Connecticut.  Therefore, Defendant's request for change of venue is **GRANTED**, and this case is hereby **TRANSFERRED**, pursuant to Rule 12 and 28 U.S.C. §§ 1391 & 1404, **to the United States District Court for the District of Connecticut, Bridgeport Division**, for all further litigation; and it is further

**ORDERED**, that Defendant's alternative request for a More Definite Statement of claim concerning the "non-discretionary bonus", pursuant to Rule 12(e), is **DENIED WITHOUT PREJUDICE** to re-filing in the District of Connecticut; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.


DATED:  January 06, 2006
Albany, New York

Lawrence E. Kahn
U.S. District Judge

20